B. Newal Squyres (ISB No. 1621)
Amanda K. Brailsford (ISB No. 4819)
Paul C. EchoHawk (ISB No. 5802)
HOLLAND & HART LLP
Suite 1400, U.S. Bank Plaza
101 South Capitol Boulevard
P.O. Box 2527
Boise, Idaho 83701-2527
Telephone: (208) 342-5000
Facsimile: (208) 343-8869

Attorneys For Defendant Philip Morris Incorporated,
    d/b/a Philip Morris USA

```
U.S. DISTRICT COURT_____
U.S. BANKRUPTCY COURT_____
         DISTRICT OF IDAHO

       APR 25 2001

_____ M. REC'D _____
LODGED_____ FILED _____
```

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| CAROL NAEVE, individually </br></br> Plaintiff, </br> v. </br></br> PHILIP MORRIS INCORPORATED, d/b/a PHILIP MORRIS USA, a corporation; and DOES I-V, unknown parties, </br></br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

Case No. CIV 01-0056-S-LMB

**DECLARATION OF JEFFREY P. SUDAC SUPPORTING DEFENDANT'S MOTION TO DISMISS AND COMPEL ARBITRATION**

I, Jeffrey P. Sudac, declare:

1.      My name is Jeffrey P. Sudac.  I reside in the town of Ridgewood, Bergen

County, New Jersey.  My office address is 120 Park Avenue, New York, New York

10017-5592.  I make the statements in this declaration based on my own personal

knowledge.

2.      From August 1, 1997 to February 1, 2001, I was a Senior Case

Management Specialist for Philip Morris Incorporated, d/b/a Philip Morris USA

DECLARATION OF JEFFREY P. SUDAC - 1

("Philip Morris").  I am currently the Vendor Management Specialist and Plan Administrator for Dispute Resolution Programs for Philip Morris.  As part of my duties as Senior Case Management Specialist, I was assigned as the designated representative for Philip Morris in the above captioned matter.  I also served as the contact person for the Idaho Human Rights Commission investigation in this matter.  In February of 2000, I prepared and submitted to the Idaho Human Rights Commission a Position Statement and supporting documentation on behalf of Philip Morris.

3.      In the course of my assigned duties as a Senior Case Management Specialist, I personally reviewed the Plaintiff's personnel file and other documents relevant to Plaintiff's employment with Philip Morris.  There are several of such documents that relate to Plaintiff's agreement to arbitrate under the Philip Morris Dispute Resolution Program (the "DR Program").  These documents include:

(1)     Mutual Agreement for Dispute Resolution of Claims, 10/11/96 (a true and correct copy is attached hereto as Exhibit A).

(2)     The Philip Morris U.S.A. Field Sales Force Application for Employment, 9/9/96 (including a "Statement of Understanding" that Plaintiff agreed to be bound by the terms of the DR Program) (a true and correct copy is attached hereto as Exhibit B).

(3)     Letter from Pete Griego, Philip Morris District Manager, to Naeve of 9/24/96 (stating that the offer of employment was contingent on Plaintiff's willingness to be bound by the terms of the DR Program) (a true and correct copy is attached hereto as Exhibit C).

DECLARATION OF JEFFREY P. SUDAC - 2

(4)     Field Sales Force Employment Form, 10/10/96 (containing Plaintiff's statement that her acceptance of the offer of employment confirms that she agrees to conform to the rules, policies, and procedures of Philip Morris) (a true and correct copy is attached hereto as Exhibit D).

(5)     The Philip Morris U.S.A. - Sales Dispute Resolution Program (a true and correct copy is attached hereto as Exhibit E).

(6)     The Philip Morris Dispute Resolution Program (a true and correct copy is attached hereto as Exhibit F).

(7)     The Philip Morris U.S.A. - Sales Dispute Resolution Benefits Plan (providing for the payment of arbitration expenses incurred by Philip Morris employees) (a true and correct copy is attached hereto as Exhibit G).

(8)     Acknowledgement, 10/11/96 (stating that Plaintiff had received, reviewed and understood: the Philip Morris U.S.A. - Sales Dispute Resolution Program; the Philip Morris Dispute Resolution Program; and the Philip Morris U.S.A. - Sales Dispute Resolution Benefits Plan) (a true and correct copy is attached hereto as Exhibit H).

4.     The documents referenced in ¶ 3 are records kept in the regular course of business by Philip Morris.

5.     The documents attached hereto as exhibits are true and correct copies of the original documents referenced in ¶ 3.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this _28th_ day of March, 2001.

DECLARATION OF JEFFREY P. SUDAC - 3

Jeffrey P. Sudac
Vendor Management Specialist,
Philip Morris Incorporated, d/b/a Philip Morris USA

## CERTIFICATE OF SERVICE

I hereby certify that on this 26 day of April 2001, I caused to be served a true

and correct copy of the foregoing by the method indicated below, and addressed to the

following:

Robert T. Wetherell, Esq.
Karen L. Silva
Brassey, Wetherell, Crawford & McCurdy
Washington Federal Plaza
101 West Idaho, Third Floor
P.O. Box 1009
Boise, ID 83701-1109
Telephone: (208) 344-7300
Facsimile: (208) 344-7077

☑ U.S. Mail
☐ Hand Delivered
☐ Overnight Mail
☐ Telecopy (Fax)

Carol Naeve
11328 N.E. 51st Circle #175
Vancouver, Washington 98682

☑ U.S. Mail
☐ Hand Delivered
☐ Overnight Mail
☐ Telecopy (Fax)

for HOLLAND & HART LLP

2781132_1.DOC

DECLARATION OF JEFFREY P. SUDAC - 5

# EXHIBIT A



MUTUAL AGREEMENT FOR
DISPUTE RESOLUTION OF CLAIMS

I, Caral Naeve_____ understand the following:

Philip Morris U.S.A. ("the Company" or "Philip Morris") recognizes that differences may occur between the Company and its employees arising out of or relating to eventual separation from employment, and that in most instances, these differences are resolved informally. However, where informal procedures do not produce a satisfactory result, the only recourse, in the past, has been litigation -- a process which is time-consuming and costly to all parties. Philip Morris believes that there are better methods for resolving disputes that are not amenable to resolution through the normal channels. Those methods include alternative dispute resolution techniques called mediation and arbitration -- fair, equitable, and more cost-effective procedures for resolving disputes. Consequently, Philip Morris U.S.A. has adopted the Philip Morris Dispute Resolution Program ("DR Program") and the Philip Morris Dispute Resolution Benefits Plan ("DR Benefits Plan") for all Field Sales employees which applies to claims following or relating to separation from employment effective January 1, 1995.

My signature below signifies that I have received copies of the Philip Morris Dispute Resolution Program, the Philip Morris Dispute Resolution Benefits Plan, and the Dispute Resolution Program Brochure, which are incorporated herein by reference. I have read these documents and voluntarily agree to be bound by the terms of these policies as a condition of my employment with Philip Morris U.S.A.

Specifically, I understand that, as a condition of my employment, I am agreeing to finally resolve any legal disputes following my separation from employment which concern or relate to my employment (which cannot be resolved internally) through mediation or binding third-party arbitration in accordance with the terms of the DR Program, instead of through the court system.

I also acknowledge that any mediation or arbitration required by this Agreement shall be conducted in accordance with the procedures and rules specified in the attached documents ("DR Rules").

The Company's agreement to employ me subject to the terms and conditions set by the Company, including the terms of this Agreement, and my agreement to enter the Company's employ under these terms, is consideration for this Agreement. Each party's promise to resolve disputes covered by the policy by arbitration in accordance with the provisions of this Agreement, the DR Program and the DR Rules, rather than through the courts, is consideration for this Agreement. The Company's agreement to reimburse me for a portion of my expenses associated with arbitration or mediation under the DR Program, whether used by me for attorneys' fees or otherwise, pursuant to the DR Benefits Plan is also independent and adequate consideration for my promises under this Agreement.

This Agreement shall survive the employer-employee relationship between the Company and me and shall apply to any Dispute I assert after my separation from employment with the Company for any reason. This Agreement can be modified or revoked only by a writing signed by both an authorized representative of Philip Morris U.S.A. and me that references this Agreement and specifically states an intent to modify or revoke this Agreement.

Any issue or dispute concerning the formation, applicability, interpretation, or enforceability of this Agreement, including any claim or contention that all or any part of this Agreement is void or voidable, shall be subject to arbitration as provided herein. The arbitrator, and not any federal, state or local court or agency, shall have authority to decide any such issue or dispute.

The decision of an arbitrator on any such issue or dispute, as well as on any Dispute submitted to arbitration as provided in this Agreement, shall be final and binding upon the parties.

Except as otherwise provided in this Agreement, both the Company and I agree that neither party shall initiate or prosecute any lawsuit which relates in any way to any Claim covered by this Agreement, and that this Agreement shall be an absolute defense to any such lawsuit or action.  I agree that if I violate this provision, I will reimburse Philip Morris for its legal fees in connection with such legal action.

I understand that this Agreement is not, and shall not be construed to create, any contract of employment, express or implied, for any set duration of time.  I acknowledge that my employment is "at will", that I may resign my employment with the Company at any time, and that my employment may be terminated by the Company at any time for any reason.  The Dispute Resolution Program contractually modifies the "at-will" employment relationship between the Company and me only to the extent expressly stated in that Program and should be interpreted in accordance with the Program's stated purposes.

This is the complete agreement of the parties on the subject of arbitration of disputes following separation from employment.

I acknowledge that the Company has provided me with a period of twenty-one (21) days within which to consider this Agreement, that I may rescind this Agreement within seven (7) days after signing it, and accordingly, that this Agreement will not become final, binding and enforceable upon me and the Company until seven (7) days after I sign it.

I acknowledge that I have carefully read this Agreement, that I understand its terms, and that I have entered into this Agreement voluntarily and not in reliance on any promises or representations by the Company other than those contained in this Agreement itself.

I further acknowledge that I have been advised to discuss this Agreement with my personal legal counsel if I so choose and that I have used that opportunity to the extent I wish to do so.

Date given to the Applicant : 10|11|96

By the Employee:

_Carol Naeve_
[Signature of New Employee]

_Carol Naeve_
[Name of New Employee]

Date: 10|4|96

By Philip Morris Incorporated:

_Gregory D. H_
[Signature of Company Rep.]

_Gregory K. Harrison_
[Name of Company Rep.]

Date: 10/11/96

# EXHIBIT B

NAME_____ Naeve , Carol L. DATE 9/9/96
Last          First          M.I

# PHILIP MORRIS U.S.A.

### FIELD SALES FORCE

### EMPLOYMENT APPLICATION

Philip Morris Incorporated is an equal opportunity employer by both policy and practice and subscribes to Federal and State laws which prohibit discrimination because of race, religion, color, age, gender, disability, national origin, sexual orientation, marital status, citizenship status or veteran status

PLEASE PRINT INK CLEARLY

# PERSONAL DATA

Name Carol Lea Wgeir     Social Security No 540 09 2058

Previous Last Name(s) N/A

Current Address:
203 Crestwood Ave

Mailing
Permanent Address: (if different from current)
PO BOX 231

Street _____ Apt. No.

Street _____ Apt. No.

Crestwood, NY 10707

Crestwood, NY 10707

City   State   Zip Code

City   State   Zip Code

Phone ( 914 ) 779-8882

Phone ( 914 ) 284-4563

Have you ever applied to Philip Morris before? (Yes) No p If yes Explain During Campus recruitment at Pace University

Referred to P.M. by _____

Are you legally permitted to work in the U.S. on a full-time job without restrictions? (Yes) No p

# EDUCATION RECORD

| Name and Location of School | Circle number of recent years | Seale N Type of Courses Degree (checkmark) | Major Course | No Years Attended |
|---|---|---|---|---|
| High School Patricia - Patricia, CA | ④ | High School | | 4 |
| College (list highest level) Pace Pleasantville NY | ⑤ ⑥ | BBA | Marketing | 2 |
| Graduate or other Chemeketa College - Salem | ⑤ | | Business | 2 |
| Business or Trade School NYIM with Salem, OR | ⑥② | Bookkeeping BBA | Estate | 10 mo. |
| | | Estate License | Estate | |

4326
5245

622

# OTHER ACTIVITIES

What are your hobbies or recreational activities? If you wish, list any clubs or organizations to which you belong that might be of value to you as an employee of P.M. (excluding those which might indicate race, religion, color, age, gender, disability, national origin, sexual orientation, marital status, citizenship status or veteran status) American Marketing Association TOGA Masters Land Pace University Alumni Association

# GENERAL

Date available ASAP     Salary desired 30,000 + Bonus

Are you free to travel overnight? YES     If yes, how many nights per week? ATLS

Driver's license number 767523753     State NY     Expiration Date 9/30/99

Are you able to perform the essential functions of the job for which you have applied? (Yes) No p

If not, would you be able to do so with a reasonable accommodation? Yes p   No p

Have you ever been convicted of a crime? (except minor traffic violations)  Yes p   (No p)

If yes, describe:

Are you willing to relocate to other geographic areas? (Yes p)  No p

# U.S. MILITARY RECORD

Branch of Service N/A

Dates of Active Service From _____ To _____     Highest Rank _____

Military Specialization & Duties: _____

OCT 23 1996

**For Secretarial & Clerical Applicants:** _(Testing for typing and shorthand may be required)_

Typing Speed _40_ WPM    Dictation Speed _NA_ WPM    Office machines operated _using PC, laser jet, Crystal Compaq_

## EMPLOYMENT HISTORY  _(Give last position first)_

| | | |
|---|---|---|
| Name of Present or Last Employer: _Citizen_ | Phone _(908) 355-1500_ | From _9/95_ |
| Address _100 Metro Park S. Lawrence Harb. NY 03879_ | | To _Present_ |
| Last Position Held _Territory Mang_  Immediate Supervisor _Albert Trade_ | Starting _24,500_ | Per _yr + Bonus_ |
| Describe Your Duties _Enhance Products performance, gain a competitive advantage and maximize gain & distribution_ | Ending _26,000_ | Per _yr + Bonus_ |
| | Amount of Bonus/Commission _10%_ | _Annual salary_ |
| Why Did You Leave? _Desire for career advancement_ | | |
| May we contact this Employer? _Not at this time_ | | |

| | | |
|---|---|---|
| Name of Present or Last Employer _Gap Kids_ | Phone _(914) 833 1903_ | From _8  93_ |
| Address _Post Rd.  Larchmont, NY  10528_ | | To _1  96_ |
| Last Position Held _Mang. Sales_  Immediate Supervisor _Duke/Store mang_ | Starting _5.50_ | Per _hr + R_ |
| Describe Your Duties _Manage store business and the sale of Children's clothing_ | Ending _9.97_ | Per _hr + R_ |
| | Amount of Bonus/Commission _Upper_ | _16.50 Annual_ |
| Why Did You Leave? _Resign for current position_ | | |
| May we contact this Employer? _Yes_ | | |

| | | |
|---|---|---|
| Name of Present or Last Employer _Erica Baird_ | Phone _(914) 921-3043_ | From _8  91_ |
| Address _620 North St. Harrison  NY  10538_ | | To _6  94_ |
| Last Position Held _Nanny_  Immediate Supervisor _Erica Baird_ | Starting _225_ | Per _Week_ |
| Describe Your Duties _Care for child and the home._ | Ending _250_ | Per _wk_ |
| | Amount of Bonus/Commission _Housing_ | |
| Why Did You Leave? _To continue my education_ | | |
| May we contact this Employer? _(413) 337-7737_ | | |

| | | |
|---|---|---|
| Name of Present or Last Employer _Century 21 Triad_  Phone _Realtor_ | | From _2  89_ |
| Address _320 Superior St.  Salem OR  97303_ | | To _7  91_ |
| Last Position Held _Realtor_  Immediate Supervisor _Gail Noyes_ | Starting _Commission_ | Per |
| Describe Your Duties _Effective_ | Ending _Commission_ | Per |
| | Amount of Bonus/Commission _N/A_ | |
| Why Did You Leave? _Moved out of state_ | | |
| May we contact this Employer? _Yes_ | | |

Which of your jobs did you like best?  # _4_   Why? _Being out in the field, love making the decisions_

Which did you like least?  # _2_   Why? _Being inside and not having control._

Have you ever been terminated or disciplined for violating an employer policy?   Yes p  (No p)

If yes, describe _____

Please provide a copy of your most recent performance appraisal or if unavailable please provide an attachment with a description of the last performance rating you received.

PROCESSED

OCT 2 3 1996

## PROFESSIONAL REFERENCES

| Full Name | Relationship | Company | Telephone No. |
|---|---|---|---|
| Erica Baird | former employer | Private | (914) 921-3048 |
| Joe Franco | former Professor | Pace University | (914) 773-3361 |
| James Arcadipane | Buisness owner | Mamaroneck Appliance | (914) 698-1176 |

## STATEMENT OF UNDERSTANDING

I have answered all questions truthfully and accurately. I understand that falsification, misstatement or omission of information on this application or during any part of the employment procedure will lead to rejection of my application or if employed, will be considered cause for my immediate dismissal. I understand that this application shall not be construed as constituting any sort of implicit or explicit contract of employment between me and Philip Morris U.S.A. I understand that my work and personal history may be investigated by Philip Morris or by its authorized agents and I authorize all persons, schools, companies, credit bureaus and law enforcement agencies to obtain or supply any information concerning my background and release them and Philip Morris Incorporated from any liability and responsibility arising from their doing so. I understand that as part of the employment process, I am subject to a pre-employment test for the presence of illegal drugs and I consent to this drug testing.

In the event of my employment with Philip Morris I agree to conform to the rules, policies and procedures of Philip Morris Incorporated, its subsidiaries and divisions. I understand that my employment and compensation can be terminated or altered with or without cause, at any time at the option of the Company. I also agree to be bound by the terms of the Dispute Resolution Program. I understand that no representative of the Company, other than an officer of the Company, has authority to enter into any agreement for employment for any specified period of time or to modify the language contained in the foregoing. Any such agreement or modification must be in writing and signed by both parties.

**For Part-Time/Temporary Applicants Only**
In addition to the above, I understand that if I am employed by Philip Morris U.S.A. and am required to use my personal automobile that Philip Morris U.S.A. will not be responsible for any damages to my vehicle in the event of an accident while working. Furthermore, I understand that I will be required to maintain minimum acceptable levels of personal automobile insurance while employed.

Applicant's Signature _____      Date 9/9/96

--------------------------------------------------------------

## ACTION TAKEN *(for interviewers use only)*

p 1   Referred for further interview by _Region 1 - See Letter_
p 2   Hold for future consideration.
p 3   Rejected because: _____
p 4   Pre-employment Drug Screen
       Date: _9/26/96_          Location: _New York_
p 5   Employment Profile Report
       Date Requested: _9/9/96_   Time _10:00 AM_
p 6   Hired                        Employment
       Position: _Territory Sales Manager_   Date: _10/14/96_

Recruiting Manager's Signature _____

# EXHIBIT C



9/24/96

Carol Naeve
P.O. Box 231
Crestwood, New York 10707

Dear Carol:

This letter is to confirm our verbal offer of employment as a Territory Sales Manager, which we discussed on 09/24/96. The headquarters of your assignment is located in [Boise, Id.]. Your starting salary will be $[29,500] per year, effective [Date Employment Begins], this date is subject to change (see below).

You will be provided with a company vehicle for business and personal use, and will be eligible to participate in our discretionary bonus program. We also offer a comprehensive benefits package which includes key items such as health care, life insurance and Deferred Profit-Sharing. You will also qualify for a partial relocation package which we discussed and will include an allowance of 2 weeks salary, a paid househunting trip to Boise Id., final transportation trip to Boise, and moving your household goods.

As discussed during your initial interview, the Immigration and Reform Act of 1986 requires verification of documents which prove your eligibility for employment in the United States. This offer is therefore contingent upon your ability to provide such documents. Please choose a document(s) discussed during our conversation which you wish to provide for this purpose, and bring the original(s) to our next meeting. Your Social Security Card is a required document. Please bring it with you on your first day of employment.

As we also discussed, this offer is contingent upon satisfactory completion of the pre-employment drug screen and background check. The effective date of your employment may change, pending our receipt of these results.

As you are aware, all employees are bound by the Company's Dispute Resolution Program which is used as the primary and sole means of resolving most employee disputes resulting from separation from the Company. This offer of employment is contingent upon your willingness to be bound by the terms of this program.

This offer is not intended to constitute a contract of employment. You may voluntarily leave employment upon proper notice, and Philip Morris USA reserves its right to terminate this offer or your employment at any time, without limitation.

Carol, we look forward to having you as a member of our Sales Team. Please feel free to contact me at (208)343-9254 with any questions.

Sincerely,

Pete Griego
District Manager

cc: Region HR Department

MARLBORO  BENSON & HEDGES  MERIT  VIRGINIA SLIMS  PARLIAMENT LIGHTS  PLAYERS  SARATOGA  CAMBRIDGE  ALPINE

# EXHIBIT D



# FIELD SALES FORCE
# EMPLOYMENT FORM

I hereby accept employment with Philip Morris U.S.A. (hereafter the Company) at a salary of $ _29,500_ per _year_ (pro-rated by pay period as appropriate). This acceptance confirms that I agree to conform to the rules, policies, and procedures of Philip Morris Incorporated, its subsidiaries and divisions.

I understand that my employment and compensation can be terminated or altered with or without cause at any time without notice at the option of the Company. I understand that no representative of the Company, other than an officer of the Company, has authority to enter into any agreement for employment for any specified period of time, or to modify the language contained in the foregoing. Any such agreement or modification must be in writing and signed by both parties. I understand that any oral or written statements to the contrary are hereby expressly disavowed and should not be relied upon.

I attest that all statements made by me in my application for employment are true and that there has been no concealment of previous employment or other pertinent information. I understand that I may be discharged, without notice, if statements and information submitted by me are incomplete, misleading or inaccurate.

I also agree that:

1. Any information related to my employment with the Company may be communicated to any person or company with whom I may hereafter seek employment or to any government agency. I hereby waive any rights that I may have to notice prior to or after the release of such information, and I release the Company from all liability resulting from the disclosure of such information.

2. I shall devote all my time during scheduled working hours solely to performing such duties as may be assigned to me by the Company, unless otherwise agreed to in writing by the Company.

3. I shall not, while employed by the Company or afterward, use for my own benefit, disclose to or use for the benefit of any other person, firm or corporation, any confidential information which I may have acquired during my employment with the Company.

4. I shall at the end of my period of employment return to the Company all property belonging to the Company or relating to its business or containing a record of work performed.

5. I shall, upon request, repay any and all monies owed the Company for any reason, including overpayment.

6. I shall, upon the demand of Company Management, immediately return any vehicle owned or leased by the Company, to the Company in accordance with the direction of management.

_____
SIGNATURE OF EMPLOYEE

SIGNED AT: _____Boise_____
                    CITY                    _Id._
                                            STATE

DATE: _10-10_, 19 _96_    _____
                                 WITNESSED BY

# EXHIBIT E



# PHILIP MORRIS USA - SALES
## DISPUTE RESOLUTION PROGRAM

## BACKGROUND

Philip Morris U.S.A. cares about its employees. We know that even productive employees can have problems at work, and that even routine differences with the Company can get bigger when there are no resources to help solve them.

Employee disputes can be time-consuming and very costly, particularly when they end up in lawsuits between the employee and the Company. Many employees who have brought lawsuits against their employer have been disappointed with the results. After long delays, years of worry and interrupted careers, much of what they recover, if anything, has gone to their lawyers. Philip Morris U.S.A. has faced the same situation, spending over a million dollars per year in legal and court fees for cases involving only a few employees. This money could be used much more productively for both your benefit and the Company's benefit. Furthermore, the courts and government agencies are now encouraging alternate means of dispute resolution.

## For the Benefit of All

Philip Morris U.S.A set out to find a more effective way to resolve all workplace disputes - one that would benefit all parties. The Open Door Policy seemed a good place to start. Over the years, the Company has had a policy to enable employees to handle problems by communicating with management and Human Resources. To make our Open Door Policy more responsive and improve its effectiveness, the Company is formalizing and publicizing our longstanding policy for all employees. Management and employees will also be provided with information about how to use it more effectively.

In addition, for disputes that arise due to separation of employment, Philip Morris U.S.A. is introducing new methods to resolve them. The first method involves an Ombudsperson — an objective Human Resources representative who has not been involved in any circumstances leading to the separation. The Ombudsperson helps the parties open communication and focuses them on the issues. Involvement of the Ombudsperson is optional and neither party involved in the dispute is bound by the Ombudsperson's recommendations.

The second method for resolving termination disputes which involve legally protected rights includes non-binding mediation and binding arbitration conducted by the American Arbitration Association (AAA), an objective third party. This is a private, professional way outside the Company to decide termination disputes. Mediation is a process in which those involved in a dispute try to resolve it with the aid of a neutral, third party, the mediator. Decisions and recommendations by the mediator are not binding on either party. Arbitration means presenting your dispute to a neutral third-party arbitrator for a *final, binding* decision.

---

*The American Arbitration Association (AAA) is a public service, nonprofit organization that offers a wide range of dispute resolution services to private individuals, businesses, associations and all levels of government. It handles approximately 60,000 cases each year and has access to over 50,000 neutral experts who can hear and decide cases.*

---

**Mediation and Arbitration through AAA can:**

- **Provide a quick and fair resolution of your legal dispute**
- **Protect your work relationships if reinstated, instead of disrupting them**
- **Prevent excessive attorney's fees**

## PROGRAM DETAILS

### OPEN DOOR POLICY

*When difficult situations happen at work, you may feel there is no place to go to resolve them. How can you go to your supervisor if your problem is with your supervisor? Where can you take your problem that will not threaten your job? The longer a situation remains unresolved, the more tensions build up at work and the problem can get bigger.*

*Working out problems when they're small often prevents the misunderstandings that occur when communication breaks down. When people stop talking to each other, they focus on their anger and may not focus on the facts. You and the Company stand the best chance of resolving problems by tackling them together through the Open Door Policy ... before they become crises.*

### What is the Open Door Policy?

Philip Morris U.S.A. has had a longstanding open-door policy. The Open-Door Policy is a voluntary process that allows you to talk to your immediate supervisor or to a higher level of management...**without fear of retaliation**. Although you are encouraged to solve your problem at the lowest possible level, you may take it as far up the line in management or Human Resources as needed.

## Using the Open Door Policy

At Philip Morris U.S.A., you are free to raise a concern with any level of management or Human Resources. To make the process the most effective and comprehensive possible, all supervisors and managers will receive training in handling problems and managing conflict.

That means, no matter whom you call, Philip Morris U.S.A. management will understand that:

- Management is committed to help resolve your workplace problems through the Open Door Policy.

- Philip Morris U.S.A **forbids any retaliation** for trying to solve a workplace dispute within the terms of the Open Door Policy.

**Immediate Manager** - Whenever possible, you should try to resolve any problems at work with your immediate manager. Because this person is close to your situation, he or she may already be aware of the problem or be in a position to offer a new perspective or some new facts that may be helpful to you.

**Higher Level of Management** - Unfortunately, sometimes your manager is part of the problem or you are not comfortable discussing the situation with him or her. If you are unsatisfied with your immediate manager's response or need to talk to someone other than your manager, you may take your problem to the next level of supervision. You are encouraged to follow the levels of management in your section since that is often the most direct way of getting matters resolved.

**Region or Headquarters Human Resources** - At any time, you may also choose to contact your Region Human Resources office or the New York Office Human Resources department for advice or assistance. These departments have many years of experience helping employees deal with a variety of workplace problems.

## Good Reasons to Use the Open Door Policy

- Management is committed to it.
- It makes early on-site problem solving more likely.
- It encourages you to give feedback to management.
- You get your questions answered and learn about your options.
- You have instant support.
- It's free.
- It's flexible.
- Retaliation is forbidden.
- It helps you help yourself.

## THE COMPANY OMBUDSPERSON

*You will be able to resolve most routine problems within the Company through your management or Human Resources. If this step fails to produce results. however, and your employment with the Company is separated, you may speak with the Company Ombudsperson to see if you can agree on what to do next.*

### What is an Ombudsperson?

The Company Ombudsperson is an objective representative from Human Resources who has not been involved in any way in the circumstances leading to your separation from the Company. The role of the Ombudsperson is to help the parties involved open the lines of communication and focus on the real issues involved in the decision leading to separation. This process can assist you in evaluating the merits of your claim after an investigation has been completed. After listening to both sides of the dispute. the Ombudsperson makes a recommendation on how to resolve the dispute. Since this is an informal, non-binding process, neither party is obligated to accept the recommendation of the Ombudsperson.

The decision to utilize the Ombudsperson is completely up to you. If, however, you decide to talk with the Ombudsperson, the Company will also be willing to participate in any discussions or meetings the Ombudsperson suggests.

### MEDIATION

*If your termination dispute is based on legally protected rights, you may feel an outside process, such as mediation, is necessary to resolve it. For many people, just presenting their case to someone outside the Company who is not involved in their problem is all that is needed to break a stalemate.*

### What is Mediation?

Mediation is a voluntary alternate dispute resolution process that is conducted by a neutral, third-party mediator. Much like the Company Ombudsperson. an AAA mediator will attempt to focus both parties on the strengths and weaknesses of their respective positions in an effort to come to a mutual and voluntary resolution of the dispute. While mediation is a voluntary, non-binding process and is not a requirement of the Dispute Resolution Program, if both the Company and the employee so desire, the dispute may be mediated and the employee shall be allowed to utilize the Dispute Resolution Benefits Plan to defray costs associated with the process.

## Typical Mediation Steps

- When you and the Company agree to mediation, AAA will assign a professional mediator.

- The first meeting date is arranged after the mediator is selected.

- You and a Company representative will meet with the mediator who will guide your discussion and help you work out your differences.

- The mediator may meet privately with you and the Company to try to develop a better understanding of the issues, and help you reach an agreement.

Mediation is almost always successful in helping you reach a resolution. If not, however, you or the Company may wish to take your dispute to arbitration for a final and binding decision.

## ARBITRATION

Philip Morris U.S.A. is an "employment-at-will" employer. Under the law this means that, just as you have the right to terminate your employment at any time and for any reason, the Company also has the right to terminate any employee at any time for any reason. The only exception to employment-at-will is if the Company has violated a legally protected right. Under the Dispute Resolution Program, the law remains the same. However, if your employment with Philip Morris U.S.A. is terminated, and a legally protected right was violated, such as protection against age, race, or sex discrimination, or sexual harassment, you may request arbitration. All outside dispute resolution processes in this program will use neutral parties provided through the American Arbitration Association (AAA).

### What is Arbitration?

Arbitration is a process in which a dispute is presented to a neutral third party, the arbitrator, for a final and binding decision. The arbitrator, like a judge, makes this decision after both sides present their side of the story through witnesses, documentation and other evidence at the arbitration hearing. There is no jury. If you win, you can be awarded anything you might seek through a court of law.

The neutral party, AAA, runs the proceedings which are held privately. Since 1926, AAA has handled hundreds of thousands of cases. Though arbitration is much less formal than a court trial, it is an orderly proceeding, governed by rules of procedure and legal standards of conduct.

## Typical Arbitration Steps

- A party involved in a dispute involving a legally protected right files a demand for arbitration with an AAA office.
- Any other parties involved are notified.
- AAA offers a list of qualified arbitrators.
- Each party numbers the list in order of preference.
- An arbitrator is selected based on the parties' preferences.
- AAA arranges a hearing date at a convenient location.
- At the hearing, testimony is given and documents exchanged.
- Witnesses are questioned and cross-examined.
- Parties may file post-hearing briefs, or summaries, of their respective positions.
- The arbitrator issues a final and binding decision.
- Copies of this decision are sent to both parties.

The Program Administrator and the AAA are available to assist you in each step of the process and provide you with important information about your benefits under the Dispute Resolution Benefits Plan.

### Requesting Mediation/Arbitration

The arbitration portion of the Dispute Resolution Program is designed so that the employee participates fully and on a more equal footing with the Company. To this end, you must pay a $250 filing fee to take your separation dispute to mediation and/or arbitration. The employee and the Company will have equal say in choosing the arbitrator, and the employee and the Company will be responsible for half of the arbitrator's expenses. The Dispute Resolution Benefits Plan will assist the employee in defraying their costs. Once you have made a request and paid your filing fee to AAA, Philip Morris U.S.A. is legally bound to participate with you in arbitration.

### Legal Consultation

The Company has access to legal advice through its legal department and outside lawyers. You may consult with a lawyer of your choosing for advice as well. Upon approval of the Program Administrator, the Plan will pay 80% of your legal fees up to $1,000 and/or arbitrator's fees and expenses up to $2,500 through the Dispute Resolution Benefits Plan, for a combined maximum of $3,500, per employee per dispute. Call the Program Administrator for details of this program.

You may participate alone or with any attorney of your choosing.

## THE DISPUTE RESOLUTION BENEFITS PLAN

An important feature of the program is financial assistance so that you may obtain a legal consultation with the attorney of your choice and help in defraying your expenses in the arbitration process. The consultation can provide you with valuable information about your legal rights.

Benefits under this Plan are paid much like benefits under other benefit plans. The Plan will pay a combined total of up to $3,500 with respect to any one employee for any one dispute.

### Attorney/Legal Consultation Fees

The Plan will reimburse 80% of the employee's legal fees up to a maximum of $1,000. The employee is responsible to pay any of their remaining legal fees.

### Mediation/Arbitration Fees and Expenses

If the employee initiates the process, the employee pays a $250 filing fee. The Company pays any filing fees which exceed this amount. The Company pays all administrative and processing fees.

The cost of mediation and/or arbitration will be divided equally between the Company and the employee. The Company will pay its portion in full. The Plan will pay 80% of the employee's portion up to a maximum of $2,500. The employee will pay any remaining balance.

The Program Administrator must approve all payments from the Dispute Resolution Benefits Plan. If you wish to apply for these benefits, contact the Program Administrator directly. Of course, if you choose to pay for your own attorney or arbitrator expenses without using the Dispute Resolution Benefits Plan, you are free to do so at any time.

*If a dispute results in separation from the Company, you may request a legal consultation under this plan **at any time** during the resolution process.*

## MEDIATION/ARBITRATION MAKES SENSE

- **Quick Resolution** - You can expect a quick resolution of your dispute. That means months, instead of years in the legal system. This benefits everyone.

- **Keep Your Recovery** - You may be able to obtain the legal advice you need under the Dispute Resolution Benefits Plan, saving you expensive legal fees. In addition, if you choose to participate without an attorney, you may not have to share any award which may be granted.

- **Independent Third Party** - You can benefit from the objectivity and experience of an outside, impartial arbitrator.

- **Get Back What You Lost** - Arbitration can restore to you what you had lost. Under the terms of the Program, an arbitrator can award you anything you might seek through a court of law.

- **Preserve Work Relationships** - If you are reinstated, a quick and impartial resolution through arbitration may make it quicker and easier for you to return to your job.

The introduction of the Philip Morris U.S.A.–Sales Dispute Resolution Program is an enhancement to our existing complaint handling process. We hope that issues related to your employment do not occur, but if they do, we hope you will take full advantage of the opportunities for a speedy, fair and effective resolution offered to you through this program.

## QUESTIONS AND ANSWERS

### How does the strengthened Open Door Policy differ from the old Open Door Policy?

Many employees were not aware of the former policy. It calls for resolving workplace disputes through management or Human Resources. Philip Morris U.S.A. will be training all of its managers and supervisors on how to use the program. Helping employees resolve their problems at work will be part of every manager's and supervisor's job.

### Can I use the Philip Morris U.S.A.–Sales Dispute Resolution Program to solve any problem that happens at work?

You may use the Open Door Policy to address any concerns, questions or problems you may have with your supervisors or coworkers. You may also request the assistance of Human Resources if moving through management proves unsuccessful.

For claims involving a separation from the Company, you may use the Company Ombudsperson, outside arbitration or if both you and the Company so decide, mediation. The outside resolution processes through AAA can be used to resolve only termination disputes involving legally protected rights, such as: discrimination based upon your age, sex, race or religion; sexual or racial harassment; or being asked to commit unlawful acts. Whether or not a dispute truly involves a legally protected right may also be determined at this time.

### How does arbitration differ from a court trial?

With arbitration, the decision is final; except under rare circumstances, it may not be reversed by subsequent proceedings. With a court trial decision, an appeal may be filed causing lengthy delays. Also, an arbitration proceeding is generally much more informal than a court case. The arbitrator will usually be a lawyer experienced in employment law who serves as a neutral arbitrator on a part-time basis. The proceeding is held in private offices instead of in a public courthouse. Each party may call and cross-examine witnesses and introduce documents supporting his or her respective position. The biggest difference, however, lies in the reasonable cost of arbitration. Because arbitration is faster and less formal, it ends up costing both parties much less to prepare the case.

### Is there any limit on the amount of the award I can win through arbitration?

No. The arbitrator has the same authority as a judge in making awards to employees in the applicable jurisdiction. That means in arbitration, it's possible for you to recover anything you might seek through the court system.

### What can I do to seek relief if I am terminated and I believe my legally protected rights have been violated?

If you believe your legally protected rights were violated when you were terminated, you may request a legal consultation through the Dispute Resolution Benefits Plan by contacting the Program Administrator. If you cannot resolve your dispute within the Company, you may pay $250 and request mediation and/or arbitration through AAA. Philip Morris will pay the administrative and processing fees. You are responsible for paying half of the arbitrator's daily fees and expenses although these fees are covered in large part by the Dispute Resolution Benefits Plan. The arbitrator will determine if a legally protected right has indeed been violated, and if so, the amount you can recover.

### Will I still be able to go to the Equal Employment Opportunity Commission (EEOC) after the new program takes effect?

Yes. The Dispute Resolution Program applies only to relief you might seek personally through the courts for a termination dispute. You are still free to consult the appropriate state Human Rights Commission, the EEOC or any other government regulatory body regarding your workplace problem. The Dispute Resolution Program will probably have some effect on the process for individual relief through such agencies. Of course, Philip Morris U.S.A. believes the enhanced program will negate a need to go anywhere else.

### Do I have to go through the Company Ombudsperson before proceeding to arbitration?

No, in some cases involving legally protected rights, you or the Company may wish to proceed directly to arbitration for a final, binding decision.

### Does the Program require me to go through each step completely before going through the next one?

The steps are arranged in the most logical pattern applicable to most disputes. However, a number of factors can affect the order of the steps you wish to utilize including: whether it involves a legally protected right, your own preference, the Company's preference or just plain common sense.

### What happens if I file a lawsuit against the Company relating to a termination dispute?

If you file a lawsuit, Philip Morris U.S.A. will file a motion with the court to dismiss the case and refer it to the Dispute Resolution Program where the dispute will be resolved by an arbitrator.

### What's the difference between the Company Ombudsperson and Arbitration?

The Company Ombudsperson is an objective representative from Human Resources who has not been involved in the circumstances leading to your separation from the Company. The Company Ombudsperson helps to open the lines of communication and makes recommendations but, unlike an arbitrator, does not hand down a binding decision.

### What's the difference between mediation and arbitration?

Mediation is similar to using the Ombudsperson, except that it is a process in which those involved in a dispute try to resolve it with the aid of a neutral third party, the mediator. In this process, the mediator helps to open up lines of communication but does not hand down a final decision. Mediation is not required by the Dispute Resolution Program, but is available if you and the Company agree to use it. Arbitration, by contrast, is where a dispute is submitted to an outside, neutral third party for a final decision which cannot be overturned by the courts, except in rare circumstances. Under the Dispute Resolution Program, if either party requests arbitration, it is mandatory.

### What if I am not satisfied with the arbitrator's decision?

The arbitrator's decision will be final and binding on you and the Company. Neither you nor the Company will be able to have decisions perceived as unsatisfactory, overturned by the courts, except under very rare circumstances.

### Can I have a lawyer present?

Yes, you may consult with an attorney prior to the arbitration hearing, and if you wish, you may have an attorney represent you at the hearing itself. Through the Dispute Resolution Benefits Plan, part of the attorney's fees may be covered.

# EXHIBIT F

# THE PHILIP MORRIS DISPUTE RESOLUTION PROGRAM

1.      Purpose and Construction

This Program is designed to provide for the quick, fair, accessible and inexpensive resolution of legal disputes between the Company and its former Field Sales employees. The Program is intended to create an exclusive procedural mechanism for the final resolution of all disputes falling within its terms. It is not intended either to abridge or enlarge substantive rights available under existing law. The Program contractually modifies the "at-will" employment relationship between the Company and its Field Sales employees, but only to the extent expressly stated in this Program. The Program should be interpreted in accordance with these purposes.

2       Definitions

A.  "AAA" means the American Arbitration Association.

B.  The "Act" means the Federal Arbitration Act, 9 U.S.C. §1, et seq.

C.  "Company" means Sponsor and Philip Morris USA, any Electing Entity, and all of their present and former parents, subsidiaries or related operating companies adopting the Program, and each of their officers, directors, employees, and agents. "Company" also includes every plan of benefits, whether or not tax-exempt, established or maintained by any such corporate entity, and the fiduciaries, agents and employees of all such entities. "Company" also includes the successors and assigns of all such persons and entities. Provided, however, that in the case of an Electing Entity, "Company" shall include the Entity only to the extent provided in the Entity's agreement to be bound by the Program.

D.  "Dispute" means a claim, demand or controversy following, related to, or associated with, separation from employment with the Company, whether involuntary, voluntary or "constructive", to which this Program applies, between persons bound by the Program or by an agreement to resolve disputes under the Program.

E.  "Effective Date" means January 1, 1995.

F   "Electing Entity" means any legal entity which has agreed to be bound to the Program as provided herein.

G.   "Employee" means any employee or former employee of the Company as of January 1, 1995 residing in the United States, or otherwise subject to the laws of the United States or any state, municipality, or other political subdivision.

H.   "Party" means a person bound by this Program.

I.   "Program" means this Philip Morris Dispute Resolution Program as amended from time to time.

J.   "Referee" means a person selected under this Program to decide a Dispute, such as an arbitrator. "Decision by Referee" means resolution of a Dispute by arbitration or any other method selected by the Parties under this Program.

K.   "Rules" means the Philip Morris Dispute Resolution Rules, as amended from time to time.

L.   "Sponsor" means Philip Morris Incorporated (Philip Morris USA).

3.   **Application and Coverage**

A.   Until revoked by Sponsor pursuant to this Program, this Program applies to and binds the Company, each Employee in Field Sales who is in the employment of the Company on or after the Effective Date of this Program, and the heirs, beneficiaries and assigns of any such person. All such persons shall be deemed Parties to this Program. Provided, however, that this Program shall not apply to any employee in a unit of employees represented by a labor organization, or to the Company with respect to such employees, except to the extent permitted in an applicable collective bargaining agreement.

B.   Except as provided for herein, this Program applies to any legal or equitable claim, demand or controversy, in tort, in contract, under statute, or alleging violation of any legal obligation, between persons bound by the Program, which relates to, arises from, concerns or involves in any way:

1.   this Program;

2.   upon separation from employment, whether involuntary, voluntary or "constructive" of an Employee, including the terms and conditions of employment, the cessation of such employment and wages alleged to be owed which are required to be paid pursuant to state or federal statute and benefits or incidents of employment with the Company except as excluded herein;

3.   any other matter following separation from employment, whether involuntary, voluntary or "constructive" related to the relationship between the Employee and the Company including, by way of example and without limitation, allegations of discrimination based on race, sex, religion, age, marital status, pregnancy, national origin or disability; harassment prohibited by state or federal statute or the common law including, but not limited to, sex, race, religion, age, marital status, pregnancy, national origin or disability; workers' compensation retaliation; defamation; infliction of emotional distress, and claims for violation under any federal, state, local or other governmental constitution, statute, ordinance, regulation or common law.

C.   Notwithstanding anything to the contrary in this Program, the Program does not apply to claims for workers compensation benefits; unemployment compensation benefits; claims by the Company for injunctive and/or other equitable relief for unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information; and claims based upon, or governed by, an Employee severance agreement or other special agreement, where the terms of which contain an arbitration or other non-judicial dispute resolution procedure, in which such case the arbitration or other non-judicial dispute resolution provisions of such agreement shall apply. The Program does not apply to disputes by Employees while currently employed by the Company. The Company may elect to propose mediation or arbitration to resolve other disputes not covered by the Program, which proposal the Employee may accept or reject. If an Employee commences a lawsuit in the courts while employed by the Company alleging a claim not covered by the Program, and subsequently separates from employment and raises a Dispute against the Company associated with that separation, the Program will also apply to the initial claim raised in the lawsuit to the extent that it arises from substantially the same facts and circumstances as the separation Dispute.

4.   **Resolution of Disputes**

All Disputes not otherwise settled by the Parties shall be finally and conclusively resolved under this Program and the Rules.

5.   **Amendment**

A.  This Program may be amended by Sponsor at any time. However no amendment shall apply to a Dispute of which Sponsor had actual notice on the date of amendment.

B.  Sponsor shall adopt, and may amend the Rules at any time. However no amendment will be effective:

1.  until notice of the amendment is served on AAA; or

2.  as to a Dispute of which Sponsor had actual notice (by notice of intent to arbitrate or otherwise) on the date of amendment.

6.   **Termination**

This Program may be terminated by Sponsor at any time. However termination shall not be effective:

A.  until 10 days after reasonable notice of termination is given to Employees; or

B.  as to Disputes which arose prior to the date of termination.

7.   **Applicable Law**

A.  The Act shall apply to this Program, the Rules, and any proceedings under the Program or the Rules, including any actions to compel, enforce, vacate or confirm proceedings, awards, orders of the Referee, or settlements under the Program or the Rules.

B.  Other than as expressly provided herein, or in the Rules, the substantive legal rights, remedies and defenses of all Parties are preserved. The law of the state where the Employee was last employed shall govern the dispute. In the case of arbitration, the arbitrator shall have the authority to apply the applicable law and to

order any and all relief, legal or equitable, including punitive damages, which a Party could obtain from a court of competent jurisdiction on the basis of the claims made in the Dispute.

C. Other than as expressly provided herein, or in the Rules, the Program shall not be construed to grant additional substantive legal or contractual rights, remedies or defenses which would not be applied by a court of competent jurisdiction in the absence of the Program.

D. The arbitrator may allow a prevailing Employee a reasonable attorney's fee as a part of the award where the discretion, right or power to allow such fees is provided under applicable law. However, any award of fees shall be reduced by any amounts which have been or will be paid by the Philip Morris Dispute Resolution Benefits Plan.

8.   **Administrative Proceedings**

A. This Program shall apply to a Dispute pending before any local, state or federal administrative body unless prohibited by law.

B. Participation in any administrative proceeding by the Company shall not affect the applicability of the Program to any such dispute upon termination of the administrative proceedings. A finding, recommendation or decision by an administrative body on the merits of a dispute subject to this Program shall have the same legal weight or effect under the Program as it would in a court of competent jurisdiction.

9.   **Exclusive Remedy**

Proceedings under the Program shall be the exclusive, final and binding method by which Disputes are resolved. Consequently, the institution of a proceeding under this Program shall be a condition precedent to the initiation of any legal action (including action before an administrative tribunal with adjudicatory powers) against the Company arising out of the employment of an Employee by the Company and any such legal action shall be limited to those under the Act.

10. **Electing Entities**

   A.   Other entities not otherwise Parties may elect to be bound by this Program by written agreement with, or amendment by, Sponsor.

   B.   Election may be made only as to some types of Disputes, or only as to some persons, in the discretion of Sponsor.

11. **Effective Date**

The effective date of this Program shall be January 1, 1995.

12. **Severability**

The terms of this Program and the Rules are severable. The invalidity or unenforceability of any provision therein shall not affect the application of any other provision. Where possible, consistent with the purposes of the Program, any otherwise invalid provision of the Program or the Rules may be reformed and, as reformed, enforced.

13. **Administration**

Sponsor shall appoint one or more persons to administer this Program who shall be known as the 'Dispute Resolution Program Administrator.' The Administrator shall be responsible for the management and administration of the Program. Any communication with the Company which is required or permitted by this Program or the Rules shall be made to the Administrator.

14. **Assent**

Employment or continued employment after the effective date of this Program constitutes consent by both the Employee and the Company to be bound by this Program, both during employment and after termination of employment. Participation in, or acceptance of benefits under, the Philip Morris Dispute Resolution Benefits Plan, likewise constitutes consent by both the Employee and the Company to be bound by this Program, both during employment and after the termination of employment.

# PHILIP MORRIS DISPUTE RESOLUTION RULES

1. **Definitions**

All definitions included in the Philip Morris Dispute Resolution Program apply to these Rules.

2. **Application**

   A. If different rules, applicable to a specific class of Disputes, have been adopted by Sponsor and served on AAA, the Philip Morris Dispute Resolution Rules set forth herein shall not apply.

   B. These Rules apply in the form existing at the time proceedings are initiated under them.

   To the extent consistent with these Rules, the Employment Dispute Resolution Rules of AAA also apply to all proceedings governed by these Rules.

3. **Initiation of the Process**

   A. A Party may initiate proceedings under these Rules for Disputes covered by this Program at any time, subject to any defenses under applicable law with respect to the timeliness of the claim, including limitations and laches.

   B. A Party may initiate proceedings by serving a written request to initiate proceedings on AAA and tendering the appropriate administrative fee.

   C. Copies of the Request shall be served by AAA on all other Parties to the Dispute within two (2) working days. The Request shall describe the nature of the dispute, the amount involved, if any, the remedy sought, and the hearing locale requested.

   D. Proceedings may also be initiated by an Employee against the Company by serving the Company. In such a case, the Company shall promptly forward any properly served notice it has received to AAA.

E.   Parties on whom notice is served shall file an answering statement within 21 days of receiving notice of intent to arbitrate or a specification of claims which shall include any counter-claims and any request that the arbitrator, if any, prepare a statement of reasons for the award.

4.   **Administrative Conference**

As soon as possible after receipt of the answering statement, if any, AAA shall convene an administrative conference. The conference may be held in person or by telephone. At the conference, AAA will determine whether the Parties are in agreement on a method to resolve the dispute. If the Parties agree on a procedure, including mediation, AAA will implement this agreement to the extent consistent with AAA's rules upon payment of any applicable fee. If the Parties cannot agree, or if the Parties have previously attempted and failed to resolve the Dispute by mediation or another non-binding mechanism, the Dispute shall be arbitrated under these Rules.

5.   **Appointment of Arbitrator**

Immediately after payment of the arbitration filing fees, AAA shall send simultaneously to each Party an identical list of names of persons chosen from a panel of qualified arbitrators which AAA shall select and maintain. Free of charge upon request, AAA shall provide Employee Participants with biographical and arbitration case history information for each arbitrator on the panel in order to assist Employees in their selection of an arbitrator. Each Party to the Dispute shall have fourteen (14) days from the transmittal date to strike any names objected to, number the remaining names in order of preference, and return the list to AAA. If a Party does not return the list within the time specified, all persons therein shall be deemed acceptable. From among the persons who have been approved on both lists, and in accordance with the order of mutual preference, AAA shall invite the acceptance of the arbitrator to serve. Any Party shall have the right to strike one list of arbitrators in its entirety. When a Party exercises this right, AAA shall issue a new list of arbitrators consistent with the above procedures, or the Parties shall mutually agree to an arbitrator.

6.   **Qualifications of the Arbitrator**

An arbitrator shall be deemed "qualified" if he or she is an attorney who is a member of the AAA commercial arbitration panel with experience in employment disputes. No person shall serve as an arbitrator in any matter in which that person has any financial or personal interest in the result of the proceeding.

Prior to accepting appointment, the prospective arbitrator shall disclose any circumstance likely to prevent a prompt hearing or create a presumption of bias. Upon receipt of such information from the arbitrator or any other source, AAA will either replace that person or communicate the information to the Parties for comment. Thereafter, AAA may disqualify that person and its decision shall be conclusive.

### 7. Vacancies

If a vacancy occurs for any reason or if an appointed arbitrator is unable to serve promptly, the appointment procedure in Section 5 shall apply to the selection of a substitute arbitrator.

### 8. Date, Time and Place of Hearings

A.  The arbitrator shall set the date, time and place of the hearing.

B.  Notice of any hearing shall be given at least ten days in advance, unless the arbitrator determines, or the Parties agree, that a shorter time is necessary.

C.  If one Party is an Employee, the arbitrator shall make every effort, without unduly incurring expense, to accommodate the Employee in the selection of a hearing location.

### 9. Conferences

At the request of AAA or of a Party or on the initiative of the arbitrator, the arbitrator or AAA may notice and hold conferences for the discussion and determination of any matter which will expedite the hearing, including:

A.  venue and timeliness;

B.  clarification of issues;

C.  determination of preliminary issues, including the filing of motions for full or partial summary determination of dispositive legal issues.

D.  discovery, including depositions;

E.  the time and location of hearings or conferences;

F.  other legal or equitable relief authorized by applicable law.

G.  pre- or post-hearing memoranda.

H.  stipulations.

I.  subpoenas of witnesses or documents.

J.  any other matter of substance or procedure.

### 10.   Mode of Hearings and Conferences

In the discretion of the arbitrator or by agreement of the Parties, conferences and hearings may be conducted by telephone or by written submission as well as in person.

### 11.   Prehearing Discovery

A.  On any schedule determined by the arbitrator, each Party shall submit in advance, the names and addresses of the witnesses it intends to produce and any documents it intends to present.

B.  The arbitrator shall have discretion to determine the form, amount and frequency of discovery by the Parties.

C.  Discovery may take any form permitted by the Federal Rules of Civil Procedure, subject to any restrictions imposed by the arbitrator.

### 12.   Representation

Any Party may be represented by counsel or by any other authorized representative of its choosing.

### 13.   Attendance at Hearings

The arbitrator shall maintain the privacy of the hearings to the extent permitted by law. Any person having a direct interest in the matter is entitled to attend the hearings. The arbitrator shall otherwise have the power to require the exclusion of any witness, other than a Party or other essential person, during the testimony of any other witness. The arbitrator shall determine whether any other person may attend any other witness. The arbitrator shall determine whether any other per-

son may attend the hearing. Upon the request of any Party, the arbitrator shall exclude any witness during the testimony of any other witness.

14. **Postponement**

    A.  The arbitrator, for good cause shown by a Party, or on agreement of the Parties, may postpone any hearing or conference.

    B.  The pendency of court or other proceedings related to the same matter is not good cause for postponement.

15. **Oaths**

Before proceeding with the first hearing, each arbitrator may take an oath of office and, if required by law, shall do so. The arbitrator may require witnesses to testify under oath administered by any duly qualified person, and if required by law or requested by any Party, shall do so.

16. **Stenographic Record**

There shall be no stenographic, tape recorded, or videotape record of the proceedings unless requested by one of the Parties, or the arbitrator rules otherwise. The Party requesting the record shall bear the entire cost of producing the same. Copies of the record shall be furnished to all other Parties on request and payment of the cost of reproduction.

17. **Procedure**

The hearings shall be conducted by the arbitrator in whatever order and manner the arbitrator determines will most expeditiously permit full presentation of the evidence and arguments of the Parties.

18. **Arbitration in the Absence of a Party**

The arbitrator may proceed in the absence of Parties or representatives who, after due notice, fail to be present or fail to obtain a postponement. An award shall not be made solely on the default of a Party. The arbitrator shall require any Party who is present to submit such evidence as the arbitrator may require for the making of an award.

## 19.  Evidence

A.  The arbitrator shall be the sole judge of the relevance, materiality and admissibility of evidence offered. Conformity to legal rules shall not be necessary, with the exception of applicable substantive law and rules governing attorney-client privilege and work product.

B.  The arbitrator may subpoena witnesses or documents at the request of a Party or on the arbitrator's own initiative.

C.  The arbitrator may consider the evidence of witnesses by affidavit or declaration, but shall give it only such weight as the arbitrator deems it entitled to after consideration of any objection made to its admission.

## 20.  Post-Hearing Submissions

All documentary evidence to be considered by the arbitrator shall be filed at the hearing, unless the arbitrator finds good cause to permit a post-hearing submission. All Parties shall be afforded an opportunity to examine and comment on any post-hearing evidence. The arbitrator shall permit the filing of post-hearing briefs at the request of a Party and shall determine the procedure and timing of such filings.

## 21.  Closing and Reopening of Hearing

A.  When the arbitrator is satisfied that the record is complete, including the submission of any post-hearing briefs or documents permitted by the arbitrator, the arbitrator shall declare the hearing closed.

B.  The hearing may be reopened on the arbitrator's initiative or upon application of a Party, at any time before the award is made.

## 22.  Waiver of Procedures

Any Party who fails to object in writing after knowledge that any provision or requirement of these procedures has not been complied with, shall be deemed to have waived the right to object to that particular non-compliance with respect to the arbitration of that particular Dispute.

**23.    Service of Notices and Papers**

Any papers, notices, or process necessary or proper for the initiation or continu-
ation of any proceeding under these Rules (including the award of the arbitrator
for any court action in connection therewith, or for the entry of judgment on an
award made under these procedures) may be served on a Party by mail
addressed to the Party or his representative at the last known address or by
personal service. Service may be made at any place, provided that the Party
served has had a reasonable opportunity to be heard with regard to service.
The AAA, the Parties, and the arbitrator may also use facsimile transmission,
telex, telegram, or other written forms of electronic communication to give any
notices required by these procedures.

**24.    Communications with the AAA and the Company**

A.    Any Party may notice, serve or communicate with AAA by contact-
ing the closest AAA office. For further information on the location
of AAA offices, you may also contact the Program Administrator,
listed below.

B.    Any Party may notice, serve or communicate with the Company by
contacting:

Dispute Resolution Program
Administrator
Philip Morris Incorporated
120 Park Avenue
New York, New York  10017
Phone: (212) 880-3316
Fax:    (212) 907-5305

**25.    Communication with the Arbitrator**

There shall be no communication between the Parties and the arbitrator other
than at any oral hearings or conferences. Any other oral or written communica-
tions from the Parties to the arbitrator shall be directed to the AAA (and copies
to the Parties) for transmission to the arbitrator, unless the Parties and the arbi-
trator agree otherwise.

### 26. Time of Award

The award shall be promptly made by the arbitrator and, unless otherwise agreed to by the Parties or specified by applicable law, no later than thirty days from the date of the closing of the hearing or the closing of a reopened hearing, whichever is later.

### 27. Form of Award

The award shall be in writing and shall be signed by the arbitrator. If any Party requests in its Notice or Answering Statement, the arbitrator shall write a summary of reasons for the decision. The award shall be executed in any manner required by applicable law.

### 28. Modification of Award

On order of a court of competent jurisdiction, or on agreement of the Parties, the arbitrator shall modify any award. The arbitrator may modify an award on the motion of a Party if the arbitrator finds that the award as rendered is ambiguous or defective in form, or if the award requires an illegal or impossible act. These are the only circumstances under which an arbitrator shall have jurisdiction to withdraw or modify an award.

### 29. Settlement

If the Parties settle their dispute during the course of the arbitration, the arbitrator may set out the terms of the settlement in a consent award.

### 30. Scope of Arbitrator's Authority

The arbitrator's authority shall be limited to the resolution of legal disputes between the Parties. As such, the arbitrator shall be bound by and shall apply applicable law including that related to the allocation of the burden of proof as well as substantive law, such as the doctrine of employment "at will". The arbitrator shall not have the authority either to abridge or enlarge substantive rights available under existing law. The arbitrator may also grant emergency or temporary relief which is or would be authorized by applicable law.

### 31. Judicial Proceedings and Exclusion of Liability

   A.   Neither the AAA nor any arbitrator is a necessary party in any judicial proceeding relating to proceedings under these Rules.

B.   Neither the AAA nor any arbitrator shall be liable to any Party for
     any act or omission in connection with any proceeding within the
     scope of these Rules.

C.   Any court with jurisdiction over the Parties may compel a Party to
     proceed under these Rules at any place and may enforce any
     award made.

D.   Parties to these Rules shall be deemed to have consented that
     judgment upon the award of the arbitrator may be entered and
     enforced in any federal or state court having jurisdiction over the
     Parties.

E.   Initiation of, participation in, or removal of a legal proceeding shall
     not constitute waiver of the right to proceed under these Rules.

## 32.   Fees and Expenses

A.   The expenses of witnesses shall be borne by the Party producing
     such witnesses, except as otherwise provided by law or in the
     award of the arbitrator.

B.   All attorney's fees shall be borne by the Party incurring them
     except as otherwise provided by law, by this Program, in the award
     of the arbitrator, or by determination of the Administrator of the
     Philip Morris Dispute Resolution Benefits Plan.

C.   Employee Parties:  If proceedings are initiated by an Employee, the
     Employee shall be responsible for the following fees:

     i.    $250 filing fee if the Parties agree to mediation or other non-
           binding means to resolve the Dispute requiring one neutral.

     ii.   $250 filing fee for arbitration initiated by an Employee requir-
           ing one neutral.

     iii.  $150 postponement/cancellation fee if the Employee causes
           or requests postponement or cancellation of a scheduled
           mediation or arbitration hearing.

    v.  Fifty percent (50%) of the arbitrator or mediator's daily fees and expenses.

D.  Company

    i.  If the proceedings are initiated by the Company the Company shall pay the entire filing fee.

    ii.  If the Parties agree to mediation or other non-binding means to resolve the Dispute requiring one neutral or if the Employee initiates arbitration, the Company will pay the remainder of the filing fee (Employee pays $250).

    iii.  The Company shall pay fifty percent (50%) of the arbitrator or mediator's daily fees and expenses.

    iv.  The Company shall pay one hundred percent (100%) of the AAA administrative hearing fees.

    v.  The Company shall pay one hundred percent (100%) of the AAA processing fees.

    vi.  The Company shall pay one hundred percent (100%) of the meeting room fees, if any.

    vii.  The Company shall pay the $150 postponement/cancellation fee if the Company causes or requests postponement or cancellation of a scheduled mediation or arbitration hearing.

E.  Other Parties:  Except as otherwise provided by law or in the award of the arbitrator, all other expenses, fees and costs of proceedings under these Rules shall be borne equally by the Parties who are not Employees.

## 33.  Interpretation and Application of These Rules

The arbitrator shall interpret and apply these Rules insofar as they relate to the arbitrator's powers and duties.  All other rules shall be interpreted and applied by the AAA.

34.   Applicable Law

A.   These proceedings and any judicial review of awards under these rules shall be governed by the Federal Arbitration Act, 9 U.S.C. §1 et seq.

B.   Except where otherwise expressly provided in these Rules, the substantive law applied shall be the applicable state or federal substantive law of the state in which the Employee was last employed. If either state or federal law is applicable in that jurisdiction, federal law shall apply.

35.   Mediation

At any time before the hearing is closed, the Parties may agree to mediate their dispute by notifying AAA. AAA shall determine what procedures apply to any such mediation.

36.   Confidentiality

All aspects of the Dispute Resolution process, including the hearing and record of the proceeding, are confidential and shall not be open to the public, except (a) to the extent both Parties agree otherwise in writing, (b) as may be appropriate in any subsequent proceedings between the Parties, or (c) as may otherwise be appropriate in response to a governmental agency or legal process.

# EXHIBIT G



**DISPUTE RESOLUTION
BENEFITS PLAN**

# PHILIP MORRIS DISPUTE RESOLUTION BENEFITS PLAN

TABLE OF CONTENTS                                                  PAGE

Purpose ...........................................................3

Definitions .......................................................3

Eligibility and Contributions .....................................5

Benefits ..........................................................5

Payment of Benefit Claims .........................................7

Administration ....................................................7

Miscellaneous .....................................................8

General Information ...............................................8

Plan Name .........................................................9

Plan Type .........................................................9

Plan Identification ...............................................9

Employer and Plan Administrator ...................................9

Plan Year .........................................................9

Plan Financing ...................................................10

Plan Continuance .................................................10

Agent for Service of Legal Process ...............................10

Non-Assignability of Benefits ....................................10

If You Become Incompetent ........................................10

Statement of Participant's Rights Under ERISA ....................11

# PHILIP MORRIS DISPUTE RESOLUTION BENEFITS PLAN

Philip Morris Incorporated, a Virginia corporation, hereby establishes this Philip Morris Dispute Resolution Benefits Plan ("Plan") for certain employees of its division, Philip Morris USA as set forth below.

The Plan hereby established has been adopted by the Board of Philip Morris Incorporated.  The Plan is not intended to qualify under Section 120 of the Internal Revenue Code of 1986, as amended from time to time.  Therefore any benefits received under this Plan may be taxable to the employee or other recipient.

The terms and conditions of the Plan are as follows:

## 1.     Purpose

The purpose of this Plan is to provide reimbursement for certain specified legal services and/or dispute resolution expenses for all Field Sales Employees of Philip Morris USA who have a Dispute with the Company which is subject to the Philip Morris Dispute Resolution Program, the provisions of which are incorporated herein by reference.  This Plan is established and shall be maintained for the exclusive benefit of its Participants.

## 2.     Definitions

Where the following words and phrases appear, they shall have the respective meanings set forth below, unless their context clearly indicates to the contrary.

A.   "Administrator": The person or persons appointed to administer this Plan in accordance with its applicable provisions.

B.   "Arbitrator": A member of AAA who is selected under the Rules to decide a Dispute under the DR Program or such other person that the Participant and Company shall mutually agree to.

C.   "Attorney": Any person who is licensed to practice law and to render any legal services subject to reimbursement or payment under this Plan.

D.   "Company": Sponsor and Philip Morris USA and every parent, subsidiary or related operating company of Sponsor adopting the DR Program, any "Electing Entity" within the meaning of the DR Program, and all of their present and former officers, directors, employees, and agents.  "Company" also includes every plan of benefits, whether or not tax-exempt, established or maintained by

**4**

any such corporate entity, and the fiduciaries. agents, and employees of all such plans. "Company" also includes the successors and of all such persons and entities.

E. "Dispute": A claim, demand, or controversy to which the DR Program applies between persons bound by such Program or by an agreement to resolve disputes under such Program.

F. "DR Program": Philip Morris Dispute Resolution Program, as amended from time to time.

G. "DR Program Fees":
Filing fee to be paid by the Employee Participant to AAA, remainder to be paid by the Company in accordance with DR Program Rule 32;

Postponement/Cancellation fee: to be borne by the party causing or requesting postponement or cancellation of a scheduled mediation or arbitration hearing;

Administrative hearing fee: to be borne by Company;

Processing fee: to be borne by Company;

Hearing Site fees: to be borne by Company;

Arbitrator's daily fees and expenses: to be borne equally by the Employee and the Company.

H. "Effective Date": January 1, 1995.

I. "Employee": Following the Effective Date of the DR Program, any current or former Field Sales employee of Philip Morris USA and every Electing Entity or individual.

J. "Mediator": A member of AAA who is selected under the Rules to mediate a Dispute or such other person that the Company and Participant shall mutually agree to.

K. "Participant": An Employee who has met the eligibility requirements set forth in Section 3 of this Plan.

L. "Plan": This Philip Morris Dispute Resolution Benefits Plan, the terms of which are stated herein, as amended from time to time.

M. "Referee": A person selected under the Rules to decide a Dispute, such as an Arbitrator. "Decision by Referee" means resolution of a

Dispute by arbitration or any other method selected by the parties under the DR Program.

N. "Rules": The Philip Morris Dispute Resolution Rules, as amended from time to time.

O. "Sponsor": Philip Morris Incorporated or its designee.

## 3. Eligibility and Contributions

A. Participation: All Employees who are, or are deemed, Parties to the DR Program are Participants in this Plan.

B. Termination of Participation: Participation in the Plan will terminate when, and to the extent, a Participant ceases to be a Party to the DR Program.

C. Contributions: All costs associated with, and benefits provided under, the Plan will be paid by Sponsor. Sponsor may establish one or more trusts to fund this Plan in its sole discretion.

## 4. Benefits

A. General: The funds held pursuant to this Plan shall provide benefits with respect to services rendered by (1) an Attorney representing one or more Participants in connection with a Dispute which is submitted to mediation or arbitration pursuant to the DR Program and/or (2) a Mediator or Arbitrator selected to mediate or decide a Dispute pursuant to the DR Program.

(i) Attorneys' Fees. The services must be performed by an Attorney or by a person who works under the direct supervision of an Attorney such as an associate attorney, paralegal, law clerk, or investigator. The services rendered must have a direct connection to the resolution of a Dispute by the means provided in the DR Program. The Attorney and the Participant must have agreed to such representation in a written document satisfactory to the Administrator.

(ii) Arbitrator or Mediator Fees and Expenses. The services must be performed by an Arbitrator or Mediator selected pursuant to the DR Program and Rules. The services rendered for which fees and expenses are payable must directly relate to the resolution of a Dispute by the means provided in the

6

DR Program and are subject to documentation and approval of the Administrator.

B.  Benefits Provided—Legal Assistance:  On and after the date an Employee becomes a Participant hereunder, benefits may be provided as detailed below for the provision of legal assistance to the Participant by an Attorney:

    (i)  Initial consultation regarding the Participant's Dispute with the Company;

    (ii)  Negotiation or mediation of the Dispute prior to Decision by Referee;

    (iii)  Representation of the Participant during any proceeding before a Referee, including any necessary discovery and preparation for the proceeding or post-hearing briefs prior to Decision by Referee.

C.  Benefits Provided—Mediator or Arbitrator Fees and Expenses:  On and after the date Employee becomes a Participant hereunder, benefits may be provided as detailed below in connection with the fees and expenses of an Arbitrator or Mediator payable by the Employee Participant under the DR Program:

    (i)  Pre-hearing fees and expenses of the Arbitrator or Mediator in connection with a preliminary conference;

    (ii)  Fees and expenses of the Arbitrator or Mediator in connection with hearings on the Dispute;

    (iii)  Post-hearing fees and expenses, if any, of the Arbitrator or Mediator in connection with the Dispute and the rendering of a decision or determination of the Dispute.

D.  Benefits Not Provided:  No benefits are payable for services rendered after Decision by Referee.

E.  Limitation on Benefits:  No benefits will be paid in excess of a combined total of $3,500.00 with respect to the representation or expenses of any one Participant for any one dispute.

F.  Amount of Benefits:  The Plan shall pay 80% of the Attorneys' fees approved by the Administrator up to a maximum of one thousand dollars ($1,000.00) per Participant per Dispute. The Plan shall pay 80% of the Arbitrator or Mediator fees and expenses

approved by the Administrator up to a maximum of two thousand five hundred dollars ($2,500.00) per Participant per Dispute.

G. <u>Qualification for Benefits</u>: Participants may apply to the Administrator for benefits from this Plan under any procedures established by the Administrator. Unless such procedures provide otherwise, application may be made either before or after the Participant has consulted with an Attorney or the Dispute has been submitted to arbitration or mediation. The Administrator may approve payment of a reasonable Attorney's fee as benefits if the Administrator determines in his or her sole and absolute discretion that the Participant has or may have a Dispute which requires legal assistance or for the Participant's portion of a Mediator's or Arbitrator's expenses if the Participant participates in arbitration or mediation under the DR Program. In making this determination, the Administrator may consider the cost and value of the services rendered or to be rendered and any budgetary constraints applicable to the Plan.

H. <u>Prohibition of Duplicate Payments</u>: No benefit shall be paid hereunder to the extent that attorneys' fees have been awarded by a Referee or a court for performance of the same legal services.

5. **Payment of Benefit Claims**

Payments for services rendered hereunder shall be made directly to the Attorney, Arbitrator or Mediator involved by or on the order of the Administrator. Payment will be made only after the services have been rendered and in no event will such payments be made prospectively.

6. **Administration**

A. <u>Appointment of Administrator</u>: The Sponsor shall from time to time appoint one or more Administrators who shall be responsible for the administration of the Plan. To facilitate the administration of the Plan, the Administrator may employ such persons as the Administrator from time to time shall designate.

B. <u>Confidentiality</u>: The Company shall have no right at any time to require the Administrator or his or her agents to reveal information which is privileged under applicable law. Subject thereto, the Sponsor may conduct audits of the Plan or of any claim at any time.

8

C. Powers of the Administrator: The Administrator shall have such powers as may be necessary to discharge his or her duties hereunder including, but not limited to, discretionary authority and power to construe and interpret the Plan, prescribe operational rules for the Plan, and to employ such agents for the Plan as he or she deems advisable.

D. Authorization of Benefit Payments: The Administrator shall issue directions concerning all benefits which are to be paid pursuant to the provisions of the Plan.

## 7.   Miscellaneous

A. Amendment: The Plan may be amended by the Sponsor at any time and from time to time. However, no amendment will affect the rights of a Participant to benefits under the Plan which accrued under the Plan prior to the date of such amendment.

B. Termination: The Plan may be terminated at any time by the Sponsor. However, termination will not affect the rights of a Participant to benefits under the Plan which accrued under the Plan prior to the date of such termination. Upon notice of termination, the Administrator shall secure all privileged or confidential documents of the Plan and shall cause them to be maintained at the Company's expense for a period of at least ten years from the date of termination.

C. Application of DR Program: The DR Program shall apply to all claims or controversies of any kind growing out of or related to this Plan, including any disagreement between or among the Administrator and the Company.

D. Governing Law: The Federal Arbitration Act (9 U.S.C. § 1 et seq.) and the Employee Retirement Income Security Act (29 U.S.C. § 1001 et seq.), as they may be amended from time to time, shall apply to this Plan.

## 8.   General Information

This booklet constitutes the "Summary Plan Description" called for by the Employee Retirement Income Security Act of 1974 (ERISA). It describes the highlights of the Plan and does not attempt to cover all the details.

The actual provisions of the Plan, as set forth in the official Plan document, will govern in settling any questions that may arise. A copy of this docu-

ment is on file in your Human Resources Department. To protect your own best interests, you should contact that Department if you have any questions about the Plan.

### Plan Name

The official name of the Plan is the "Philip Morris Dispute Resolution Benefits Plan." In this booklet, it is sometimes referred to simply as the "Plan."

### Plan Type

The Philip Morris Dispute Resolution Benefits Plan is an employee welfare benefit plan under ERISA. As such, benefits payable under the Plan are not insured by the Pension Benefit Guaranty Corporation.

### Plan Identification

The Plan is identified by the following numbers:
Employer Identification Number 13-1607658
Plan Number 530

### Employer and Plan Administrator

The Plan is maintained by Philip Morris Incorporated, 120 Park Avenue, New York, New York 10017.

The Plan is administered by the Committee. The members of this Committee are appointed by the Board of Directors of Philip Morris Companies Inc. The Committee has final discretionary authority and power to interpret the provisions of the Plan. The members serve without fee or compensation, and expenses of the Committee, if any, are paid by the Company. The Committee has appointed the Administrator and may appoint other persons or committees to handle certain Plan administrative matters. The Administrator may delegate certain administrative matters to employees of the Company. More information about the Plan and its administration can be obtained by calling or writing to the Administrator, c/o Philip Morris Incorporated, 120 Park Avenue, New York, New York 10017, telephone (212) 880-5000.

The Administrator and the Committee have final and sole discretionary authority to determine the groups that are eligible to participate and receive benefits as well as to interpret the terms of the Plan and finally resolve all ambiguities, inconsistencies or omissions.

### Plan Year

The Plan and all of its records are kept on a calendar year basis, beginning on January 1 and ending on December 31 of each year.

### Plan Financing

The Sponsor pays the entire cost of any benefits payable under the Plan from its general assets — there is no cost to employees. The Sponsor reserves the right to meet the obligations created under this Plan through one or more trusts or other agreements.

### Plan Continuance

It is expected that the Philip Morris Dispute Resolution Benefits Plan will be continued indefinitely, but the Committee has reserved the right to amend, suspend, modify or terminate the Plan, or modify any benefits payable from the Plan, in whole or in part, at any time, subject to the Plan's provisions and applicable laws. Any other electing entity may terminate, in whole or in part, the participation of its employees. For example, the Plan may be amend-ed to change the amount of benefits that an employee may receive, even if the amendment restricts or terminates for the future an amount of benefits now available, and to exclude or include one or more classes of employees from coverage under the Plan. The foregoing are not the sole changes which may be made to the Plan. Except as expressly authorized by the Plan document or the Committee in any action causing the termination of benefits or the entire Plan, no further benefits affected by the action are to be provided by the Plan other than for benefits accruing before the date of termination. Notice of a Plan amendment or termination, may, but need not be given unless required by law.

### Agent for Service of Legal Process

The person designated as agent for service of legal process is the Secretary, Philip Morris Incorporated, 120 Park Avenue, New York, New York 10017. Such service may also be made on the Plan Administrator.

### Non-Assignability of Benefits

Except as provided by applicable law, no one can take away your ben-efits under this Plan; your creditors cannot claim your benefits to satisfy debts; and you cannot give, sell, assign, pledge, hypothecate, encumber or otherwise transfer your benefits to someone else or use it as collateral for a loan.

### If You Become Incompetent

If the Administrator determines that you are not capable of receiving your benefits, the Administrator can direct payments to be made for your benefit to a person who is taking care of you.

### Statement of Participant's Rights under ERISA

The Department of Labor issued regulations which require the Company to provide you with a statement of your rights under ERISA with respect to this Plan. The following statement was designed by the Department of Labor to satisfy this requirement and is presented accordingly. It has been modified slightly in order to be consistent with the DR Program.

As a Participant in this Plan, you are entitled to certain rights and protection under the Employee Retirement Income Security Act of 1974. ERISA provides that all Plan Participants are entitled to:

1. Examine, without charge, all Plan documents and copies of all documents filed by the Company with the U.S. Department of Labor. This includes annual reports and Plan descriptions. All such documents are available for review in your Personnel/Human Resources Department.

2. Obtain copies of all Plan documents and other Plan information by writing to the Plan Administrator. The Administrator may make a reasonable charge for these copies.

3. Receive a summary of the Plan's annual financial report. Once each year, the Plan Administrator will send you a Summary Annual Report of the Plan's financial activities at no charge.

In addition to creating rights for Plan Participants, ERISA imposes duties upon the people who are responsible for the operation of the employee benefit plan. The people who operate your Plan, called "fiduciaries" of the Plan, have a duty to do so prudently and in the interest of you and other Plan Participants.

No one, including your employer or any other person, may fire you or otherwise discriminate against you in any way to prevent you from obtaining a pension or welfare benefit or exercising your rights under ERISA.

If your claim for a benefit is denied in whole or in part, you must receive a written explanation of the reason for the denial. You have the right to have the Plan review and reconsider your claim.

Under ERISA, there are steps you can take to enforce the above rights. For instance, if you request materials from the Plan and do not receive them within 30 days, you normally would have the right to file suit in a federal court. However, in light of the adoption and implementation of the DR Program, you may initiate the same legal action in arbitration under the DR Program. In such a case, the arbitrator may require the Plan Administrator to provide the

12

materials and pay you up to $100 a day until you receive the materials, unless the materials were not sent because of reasons beyond the control of the Administrator. If you have a claim for benefits which is denied or ignored, in whole or in part, you may also initiate a legal action under the DR Program. If it should happen that Plan fiduciaries misuse the Plan's money, or if you are discriminated against for asserting your rights, you may seek assistance from the U.S. Department of Labor, or again you may initiate legal action under the DR Program.

The Arbitrator will decide who should pay costs and legal fees. If you are successful, the Arbitrator may order the person you have sued to pay these costs and fees. If you lose, the Arbitrator may order you to pay these costs and fees, for example, if it finds your claim is frivolous.

If you have any questions about your Plan, you should contact the Plan Administrator through your Human Resources Department. The Administrator will be glad to help you. If you have any questions about this statement or about your rights under ERISA, you may contact the nearest Area Office of the U.S. Labor-Management Services Administration, Department of Labor.

# EXHIBIT H

## *ACKNOWLEDGMENT*

I, Carol Naeve , acknowledge that I have received the following materials
*(Print Name)*
and have reviewed and understand them.

- The Work Community Employee Handbook outlining the Philip Morris USA Code of Conduct;

- The brochure describing the Philip Morris USA - Sales Dispute Resolution Program including:

  - The Philip Morris Dispute Resolution Program pamphlet;

  - The Philip Morris USA - Sales Dispute Resolution Benefits pamphlet.

**Date Given to Employee:** ___10/11/96___

*Employee Signature:* ___X Carol Naeve___

*Territory Number:* ___X 511504___

*Date:* ___X 10/11/96___

***Please return to your immediate supervisor within two weeks of receipt.***
***Your immediate supervisor will send the file copies to the***
***Region Human Resources Office.***

1st copy - Richmond Personnel File
2nd copy - Region Personnel File
3rd copy - Employee's Copy